BURRELL et al. v. UNITED STATES, to Use of FIRST NAT. BANK OF
EVERETT, WASH.

(Circuit Court of Appeals, Ninth Circuit.   June 18, 1906.)

No. 1,263.

1. COURTS—FEDERAL COURTS—JURISDICTION—PARTIES—UNITED STATES.
    Act Cong. August 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p.
    2523], requires contractors for public buildings to execute a bond to the
    United States to pay for all labor and materials and authorizes persons
    supplying labor or materials to sue in the name of the United States for
    their use on such bond without expense, however, to the United States.
    *Held* that, in an action on a bond given after such act, the United States
    was a mere nominal or formal party whose presence was insufficient to
    confer federal jurisdiction.
        [Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 843.]

2. SAME—DIVERSE CITIZENSHIP.
    Where an action in the name of the United States on a public con-
    tractor's bond was brought by a banking corporation having its banking
    house in the state of Washington, and the contractor sued was a resi-
    dent of California, and his surety a corporation organized under the
    laws of Connecticut, and the amount involved exceeded the sum of $2,000,
    the federal jurisdiction existed because of diverse citizenship.
        [Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 857.]

3. ARBITRATION AND AWARD—JUDGMENTS—ENTRY—FEDERAL COURT.
    Where, in an action in the federal court, the parties agreed to a trial
    before arbitrators, the court had jurisdiction to enter judgment on the
    award.
        [Ed. Note.—For cases in point, see vol. 4, Cent. Dig.  Arbitration and
    Award, §§ 466–470.]

4. SAME—ERRORS—OMISSION OF EVIDENCE.
    Where an arbitration agreement provided that proof should be taken
    before the arbitrators in the same manner as in the trial of cases in
    court, and that the judgment entered on the award should be unappeal-
    able, objections made to the introduction of evidence could not be urged
    against a judgment entered on the award.
        [Ed. Note.—For cases in point, see vol. 4, Cent. Dig.  Arbitration and
    Award, §§ 450, 466–470.]

5. EVIDENCE—COMPETENCY—REBUTTAL OF EVIDENCE FOR ADVERSE PARTY.
    Where, on an issue as to the sufficiency of certain mill work, de-
    fendant proved that the mill company's superintendent was incompetent
    because of drunkenness to perform his duties in a good and workmanlike
    manner, the mill company was entitled to show in rebuttal that other
    work of like character done contemporaneously for other parties under
    the management of the same foreman was good and acceptable.
        [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§
    445–454; vol. 46, Cent. Dig. Trial, §§ 146–152.]

In Error to the Circuit Court of the United States for the North-
ern Division of the Western District of Washington.

William Lair Hill and Graves, Palmer, Brown & Murphy, for the
plaintiffs in error.

Frances H. Brownell, for the defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY,
District Judge.

ROSS, Circuit Judge. The case shows that the plaintiff in error, who was defendant in the court below, had a contract with the United States for the erection of certain buildings at Ft. Casey, in the state of Washington. He gave the bond required by the act of Congress approved August 13, 1894, entitled "An act for the protection of persons furnishing materials and labor for the construction of public works," on which bond the Ætna Indemnity Company was surety.

The act of August 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, pp. 2523, 2524], is as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution: Provided, that such action and its prosecution shall involve the United States in no expense.

"Sec. 2. Provided that in such case the court in which such action is brought is authorized to require proper security for costs in case judgment is for the defendant."

The Wheelihan-Weidauer Company supplied certain millwork in the performance of this contract, and at the conclusion thereof claimed a balance due it on that account of $5,346.89. It assigned its rights to the First National Bank of Everett, Wash., and, Burrell, having refused to pay the amount, the bank instituted the present action in the court below, in the name of the United States for the use and benefit of the bank. Issue was joined, the defendant Ætna Indemnity Company disclaiming knowledge of the state of the account, and the defendant Burrell admitting a liability of $28.10, and denying any greater liability.

It is clear, we think, that the United States has no real interest, direct or indirect, in the controversy. Manifestly, it could not sue alone, for it is not entitled to any of the money. A controversy, in the sense of the judiciary act, is, as said by the court in United States, to Use of Edward Hines Lumber Company, v. Henderlong et al. (C. C.) 102 Fed. 2, a case "brought before some competent court of justice for forensic discussion and judicial decision. In order that the United States shall become plaintiffs in a case or controversy in a judicial tribunal, they must have some interest in the matter in issue. Where the plaintiff's statement of his case discloses that he has no interest in the controversy, and it affirmatively appears that the

right to the matter in controversy is vested wholly in some one else, it is difficult to perceive how such person can be said to have a case or controversy. The term 'parties' includes all persons who are directly interested in the subject-matter in issue, who have a right to make a defense, control the proceedings, or appeal from the judgment. Strangers to the suit are persons who do not possess these rights. Hunt v. Haven, 52 N. H. 162. The plaintiff is he who, in a personal action, seeks a remedy in a court of justice for an injury to, or a withholding of, his rights. The legal plaintiff is he in whom the legal title or right of action is vested. The equitable plaintiff is he who, not having the legal title to the right of action, is in equity entitled to the thing sued for. Such are the accepted definitions of the terms 'parties' and 'plaintiffs.' The United States are neither the legal nor equitable plaintiffs in the present action. They are seeking no remedy for any injury to, or for the withholding of, any of their rights; nor have they any equitable right to or interest in the thing sued for. They have neither the legal right of action, nor any equitable interest in the matter in controversy. The United States are simply a formal or modal party—a mere name, used for convenience only. The right of action is vested solely in the Edward Hines Lumber Company, and it, and not the United States, is the real party plaintiff in the pending controversy. The statute merely delegates authority to the laborer or materialman to use the name of the United States for his use and benefit in any court having jurisdiction of the subject-matter and the parties. It can hardly be supposed that it was the purpose of the statute to authorize a laborer or materialman to prosecute petty claims, involving only a few dollars, in this court, when a more speedy and inexpensive trial can be had in the courts of the state. This is obvious from the fact that Congress has manifested a steady purpose to restrict, rather than to enlarge, the jurisdiction of the courts of the United States. No reason is perceived why the courts of the United States should take cognizance of the suits of laborers and materialmen, unless the citizenship of the parties, and the amount involved in the controversy, are such as would give jurisdiction as in the case of other suitors. These views find support in the decisions of the Supreme Court in Browne v. Strode, 5 Cranch, 303, 3 L. Ed. 108; McNutt v. Bland, 2 How. 9, 11 L. Ed. 159; Walden v. Skinner, 101 U. S. 577, 588, 589, 25 L. Ed. 963."

By the law of Maryland, the bond of an administrator is taken to the state, but is held for the security of persons interested in the estate of the deceased. A suit on such a bond was commenced in a state court of Maryland against citizens of Maryland, and was removed to the Circuit Court of the United States on the ground that the real party in interest was a citizen of New Jersey. In considering the question of jurisdiction there raised, the Supreme Court held that the case must be treated, so far as the jurisdiction of the Circuit Court of the United States is concerned, as though Markley, for whose use the action was brought in the name of the state, was alone named as plaintiff; saying in its opinion:

"The name of the state is used from necessity when a suit on the bond is prosecuted for the benefit of a person thus interested, and, in such cases, the real controversy is between him and the obligors on the bond. If the residence of these parties be in different states, the Circuit Court of the United States has jurisdiction." State of Maryland, for use of Markley v. Baldwin et al., 112 U. S. 490, 5 Sup. Ct. 278, 28 L. Ed. 822.

Inasmuch, therefore, as it appears from the pleadings that the First National Bank of Everett is a corporation organized under the United States banking law, having its banking house at the city of Everett, state of Washington, that the defendant Burrell is a resident of the state of California, and the defendant Ætna Indemnity Company is a corporation organized under the laws of the state of Connecticut, and that the amount involved exceeds the sum of $2,000, it is clear that the court below had jurisdiction of the action, on the ground of the diversity of citizenship of the parties.

The record further shows that the judgment of the court below was entered upon an award made in pursuance of the following written stipulation of the parties:

"It is stipulated and agreed by and between Brownell & Coleman, counsel for the above-named plaintiff and Graves, Palmer, Brown & Murphy, counsel for the above-named defendants, that in lieu of a trial of this case before the above-entitled court the same shall be arbitrated and decided by three arbitrators, and that the method of appointment of arbitrators and the terms and conditions of arbitration shall be as follows:

"I. Each side shall appoint an arbitrator and shall notify the other side of their appointment before the 4th day of July, 1905. The two arbitrators so appointed shall then before the 10th day of July, 1905, select a third arbitrator, and the third so appointed shall constitute the board of arbitration.

"II. Said board of arbitration shall meet at the office of Graves, Palmer, Brown & Murphy, in the city of Seattle on the morning of July 10, 1905, for the purpose of hearing testimony upon the matters involved. No postponement of the hearing shall be had except by the consent of both parties. The hearing shall last from 9:30 a. m. to 5 p. m. on each week day, with one hour's intermission for lunch, until the same has been concluded, and within three days after the conclusion of the taking of testimony, the said arbitrators shall sign an award which shall be prepared in duplicate. Said award shall be substantially in the following form, to wit:

"'In the United States Circuit Court for the Western District of Washington, Northern Division.

"'United States of America, for the Use and Benefit of the First National Bank of Everett, Plaintiff, v. Alfred W. Burrell and the Ætna Indemnity Company, Surety, Defendants.        No.———.

"'We the undersigned three arbitrators appointed in the above-entitled cause, having heard the evidence adduced, and the arguments of counsel, do find in favor of the plaintiff in the sum of $———, with interest thereon from the ——— day of ———. 19—.

"'Dated this ——— day of July, 1905.

"'_____
"'_____
"'_____;

"A decision of any two of the arbitrators shall be deemed a decision of the board, but no decision shall be reached without the knowledge and in the presence of all three arbitrators.

"III. In the taking of testimony before the arbitrators, the board shall follow a procedure which shall be so far as is practicable the rule of procedure in the trial of cases in the above-entitled court.

"IV. Upon the award of the arbitrators which shall be executed in duplicate, and one copy delivered to the attorneys for each party, either party shall be entitled, on five days' notice to the other, to move the above-entitled court for the entry of a judgment for the amount of the award, with interest thereon from the date fixed in the award, which judgment shall thereupon be entered, and if for any reason the above-entitled court shall refuse to enter judgment thereon judgment may be entered in the superior court of the state of Washington, for King county as on an arbitration and an award in accordance with the statute in such case made and provided.

"It is further stipulated and agreed that such judgment shall be unappealable, and shall not be stayed. This clause is of the very essence of this stipulation, and was finally consented to by both parties as a consideration moving toward the arbitration, and it was in consideration moving toward the arbitration, and it was in consideration of this agreement that the trial of this case was postponed from June 20, 1905, at the request of the defendants, upon which date the case was set for trial. Each side shall pay the costs of their own witnesses and of the arbitrator appointed by it; the cost of the third arbitrator, which shall not exceed $10.00 per day, shall be paid one-half by each side.

"Dated this 20th day of June, 1905.

"Brownell & Coleman,
"Attorneys for Plaintiff,
"Graves, Palmer, Brown & Murphy,
"Attorneys for Defendants."

It is contended on the part of the plaintiff in error that a federal court is not authorized to enter judgment on an award so made. The decisions of the Supreme Court are to the contrary. The suit of Burchell v. Marsh et al., 58 U. S. 344, 15 L. Ed. 96, involved a case in which one of the parties sued the other for debt, who, in his turn, claimed damages for the manner in which he was sued. One of the claims made by the party who was sued was for damages for the violence of the agent of the creditors, and the referees to whom the case was submitted for arbitration heard evidence upon that subject. Afterwards, a bill in equity was filed in the Circuit Court by the losing party to the arbitration proceedings, to set aside the award on the ground that it "was made either from improper and corrupt motives, with the design of favoring said Burchell, or in ignorance of the rights of the parties to said submission, and of the duties and powers of the arbitrators who signed the said award." The trial court having entered a decree annulling the award, the Supreme Court reversed it with directions to dismiss the bill, but without prejudice to any legal defense, saying, among other things:

"Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation. 'In order,' says Lord Thurlow (Knox v. Symmonds, 1 Ves. 369), 'to induce the court to interfere, there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by evidence;

but in case of mistake it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award.'"

In Hecker v. Fowler, 69 U. S. 123, 128, 17 L. Ed. 759, the Supreme Court said:

"Circuit Courts, as well as all other federal courts, have authority to make and establish all necessary rules for the orderly conducting of business in the said courts, provided such rules are not repugnant to the laws of the United States. Practice of referring pending actions is coeval with the organization of our judicial system, and the defendants do not venture the suggestion that the practice is repugnant to any act of Congress. On the contrary, this court held, in the case of the Alexandria Canal Co. v. Swann, 5 How. 89, 12 L. Ed. 60, that a trial by arbitrators, appointed by the court, with the consent of both parties, was one of the modes of prosecuting a suit to judgment as well established and as fully warranted by law as a trial by jury, and, in the judgment of this court, there can be no doubt of the correctness of that proposition."

In Thornton v. Carson, 11 U. S. 596, 3 L. Ed. 451:

"Two actions of debt, commenced at law by Carson against Thornton, upon two bonds for the payment of money, were referred, by consent, under a rule of court, to arbitrators, who awarded that the first action 'should be marked and considered settled, and that the other also should be marked and considered settled; provided that the defendant, Thornton, in conjunction with the trustees of the Gold-Mine Company of North Carolina, should convey and secure, by a deed and assurance legally executed, with proper and usual covenants unto John K. Carson, his heirs and assigns, for the benefit of the said John and the heirs of Thomas Carson, deceased, on or before the 1st day of January, 1811, one-eleventh part of all the minerals and mines that might thereafter be found upon a tract of land, in the county of Montgomery, and state of North Carolina, which, by deeds bearing date the 5th of December, 1805, was conveyed by the said John K. Carson to the said William Thornton, and by the said William Thornton to the said trustees of the Gold-Mine Company; and that, if such conveyance and assurance should not be made on or before the said 1st of January, 1811,' then, in the first suit judgment should be entered up by the court for the plaintiff (Carson), for the penalty of the bond, to be released on the payment of a certain sum expressed on the award, and also in the second suit judgment should be entered for the plaintiff, for the penalty of the bond, to be released on the payment of another sum also expressed in the award; and that upon receiving such conveyance and assurance Carson should convey to Thornton five shares in the Gold-Mine Company of North Carolina, which Carson had subscribed for on the 1st of April, 1806."

Judgment having been entered by the trial court for the amount of the money mentioned in the award, the Supreme Court of the United States affirmed the judgment. See, also, York & Cumberland R. Co. v. Myers, 59 U. S. 246, 15 L. Ed. 380; Robinson v. Mutual Ben. Loan Ins. Co., Fed. Cas. No. 11,961; New York Working Co. v. Schnieder, 119 N. Y. 475, 24 N. E. 4.

Indeed, it is difficult to see any difference in principle between the stipulation upon which the judgment here appealed from was based and a stipulation by the counsel in the cause to the effect that the plaintiff was entitled to a judgment in the sum of so many dollars. We have entertained and considered the appeal, notwithstanding the clause of the stipulation to the effect that the judgment entered upon the award should be unappealable, because, if the contention of the

147 F.—4

appellant that no judgment could legally be entered upon an award in a federal court was well taken, perhaps he should not be bound by his agreement not to appeal from the judgment entered thereon; but, being of the opinion, as already indicated, that the contention is not sound, it would seem that the appellant should be precluded from questioning, on appeal from such judgment, any alleged error in the arbitration proceedings. Nevertheless, we have looked into his complaint in that regard.

One of the assignments of error is as follows:

"The court erred in overruling the motion of defendants to resubmit the cause to the arbitrators for errors of law predicated upon the following stipulation of fact with reference to the introduction of evidence before said board of arbitration wherein four competent witnesses were introduced on the part of plaintiff over the objection and exception of counsel for defendants to the effect that other millwork furnished on other buildings by the real party in interest, the Wheelihan-Weidauer Company, was unobjectionable and was furnished in a good and workmanlike manner and particularly that at Ft. Worden, which was prepared, some just prior to and some contemporaneously with the millwork at Ft. Casey, which is the millwork in controversy in this action, and that the same was of similar plan, design and workmanship and practically performed under the same management as that at Ft. Casey as more fully set forth in the stipulation of fact as follows, to wit:

" 'It is hereby stipulated and agreed by and between the respective parties, through their respective counsel in open court, that in the exceptions filed to the award of the arbitrators in the above-entitled matter according to the statutes of the state of Washington, and in passing upon whether judgment shall be entered upon the award of said arbitrators in this cause, the following testimony of four competent witnesses was introduced on the part of plaintiff over the objection and exception of counsel for defendants, namely, to the effect that other millwork furnished on other buildings by the real plaintiff in interest, the Wheelihan-Weidauer Company, was unobjectionable and was furnished in a good and workmanlike manner, and particularly that at Ft. Worden, which was prepared, some just prior to and some contemporaneously with the millwork at Ft. Casey, which is the millwork in controversy in this action, and that the same was of similar plan, design and workmanship, and practically performed under the same management as that at Ft. Casey, the testimony having been introduced in rebuttal by plaintiff after defendants had attempted to show by four competent witnesses that the superintendent of the Wheelihan-Weidauer Company was incompetent by reason of drunkenness to perform his duties in a good and workmanlike manner.

" 'The above stipulation is entered into by the parties hereto without the plaintiff in any manner waiving his right to question the right of the court to consider such testimony in entering judgment or conceding in any manner whatsoever that the fact therein set forth has any relevancy or materiality under the agreement of arbitration or under the statutes of the state of Washington in such case made and provided or the decision of the Supreme Court of the state of Washington thereon.

" 'Dated this 21st day of August, 1905.

" 'Brownell & Coleman,
" 'Attorneys for Plaintiff,
" 'Graves, Palmer, Brown & Murphy,
" 'Attorneys for Defendants.' "

That errors of the sort indicated in the foregoing assignment of error cannot be urged against an award is well settled in the state of Washington, where this case arose, and elsewhere. School Dist. v. Sage, 13 Wash. 352, 43 Pac. 341; Burchell v. Marsh, 58 U. S. 344,

15 L. Ed. 96; York & Cumberland R. Co. v. Myers, 59 U. S. 246, 15 L. Ed. 380; Wilson v. Wilson, 18 Colo. 615, 34 Pac. 175; 1 Am. & Eng. Encyc. of Law, p. 710.

According to the stipulation of the parties, the testimony introduced before the arbitrators of which the plaintiff in error complains was that of four witnesses to the effect that other millwork furnished on other buildings by the real plaintiff in interest, the Wheelihan-Weidauer Company, was unobjectionable and was furnished in a good and workmanlike manner, and particularly that the work done by the Wheelihan-Weidauer Company at Ft. Worden, at the same time and under the same management, and of the same character, was satisfactory; such testimony having been introduced in rebuttal by the plaintiff after the defendants had attempted to show by four competent witnesses that the superintendent of the Wheelihan-Weidauer Company was incompetent by reason of drunkenness to perform his duties in a good and workmanlike manner. Such rebuttal testimony was clearly admissible, for, when the competency of the foreman of the company was attacked by the defendants to the suit, it was certainly competent for the plaintiff to show that other work of like character, done contemporaneously for other parties, under the management of the same foreman, was good and acceptable. "By their fruits ye shall know them. Do men gather grapes of thorns, or figs of thistles?"

The judgment is affirmed.