Arbitration of Controversies between KANMAK MILLS, Inc. (formerly known as Kanmak Textiles, Inc.), Petitioner,

and

SOCIETY BRAND HAT CO., Respondent.

No. 10041(2).

United States District Court
E. D. Missouri, E. D.
July 19, 1955.

Bryan, Cave, McPheeters & McRoberts, George W. Simpkins, Marion S. Francis, St. Louis, Mo., for petitioner.

Murray Steinberg, St. Louis, Mo., for respondent.

HULEN, District Judge.

Petitioner, by application filed November 10, 1954, moves to vacate an arbitration award in favor of respondent, in the amount of $120,000. See Title 9 U.S.C. A. §§ 2, 4, 9, 10, 11 & 13.

The award grew out of six contracts, numbered 139, 140, 141, 143, 144, 156, dated November 17, 1947, and one contract, number 193, dated April 28, 1948, for delivery of cloth by petitioner to respondent.

Each of the contracts contained the following arbitration terms:

"8. Controversies or claims arising with respect to this contract shall be referred to arbitration in the following manner:

"a. When the controversy or claim relates to the condition or quality of any merchandise delivered or to be delivered under the terms hereof, such controversy shall be referred to the Mutual Adjustment Bureau of the Cloth and Garment Trades by the buyer, or upon his failure to refer such controversy or claim to said Mutual Adjustment Bureau of the Cloth and Garment Trades the seller may make such reference.

"If delivery of the merchandise which is the subject of such controversy or claim has been made, then the buyer shall within ten (10) days after demand by the seller forward such merchandise to the Mutual Adjustment Bureau of the Cloth and Garment Trades. The failure of the buyer to forward the merchandise in question to the Mutual Adjustment Bureau of the Cloth and Garment Trades within ten (10) days after demand in writing by the seller shall constitute a waiver of the controversy or claim previously asserted.

"The decision of the Mutual Adjustment Bureau of the Cloth and Garment Trades on all controversies and claims submitted to it as provided herein shall be binding upon the parties hereto.

"b. All other controversies arising out of or relating to this contract, or breach thereof, shall be settled by arbitration in accordance with the Rules, then obtaining, of the American Arbitration Association and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction."

The 1947 contracts called for 66,500 yards of cloth. On delivery of 18,572 yards of cloth on the first shipment on the 1947 orders the respondent examined the cloth and claimed it was in bad condition. On the request of petitioner samples of the cloth were sent to Mutual Adjustment Bureau of the Cloth and Garment Trades.[1] Mutual found 3902⅖ yards "were normal goods and 10,125⅖ yards were seconds." The balance of the delivered yardage is unaccounted for. Mutual proceeded no further than to determine the condition of the goods. Respondent then cancelled all of the 1947 orders by letter dated May 1, 1948. The letter contained the following paragraph:

"In other words, all orders that we have placed with you to date which were not shipped before the

---

[1.] Herein referred to as "Mutual."

last day of April are hereby cancelled with the exception, of course, of the new order No. 193 which is dated April 28th, 1948."

Petitioner accepted the cancellation and no further attempt at delivery was made on orders of 1947.

As to order 193 (100,000 yards) a dispute arose as a result of respondent demanding that cloth "free from foreign ends" be delivered. Petitioner countered by standing on its interpretation of the contract, that it called only for "R.O. M."[2] cloth. No cloth was delivered under contract 193. Petitioner by telegram suggested the dispute be referred to arbitration—

"RE YOUR TELEGRAM 716 WE MAINTAIN OUR POSITION. GOODS SOLD ON CONTRACT NBR 193 AS R.O.M. WILL SHIP ON THIS BASIS ONLY. IF NOT AGREEABLE WILL SUBMIT TO ARBITRATION FORTHWITH."

On November 22, 1949, respondent filed a demand before the American Arbitration Association[3] on all seven contracts, reciting their terms in general and alleging breach of failure to make delivery, and—

" * * * that all of said piece goods was not in accordance with the samples which were the basis of the execution of the contract(s) and that all of the piece goods sent to the Society Brand Hat Company under any of said contracts was unusable for the fabrication of men's trousers."

Damages were asked for failure—

" * * * to make delivery of the above described piece goods and for further damages for delivery of piece goods not in accordance with samples. * * * "

And for a purchase price payment refund of $10,000.

Petitioner filed an answer denying liability—

" * * * by reason of the alleged failure to make delivery of the piece goods referred to in the separate contracts set forth in the Demand for Arbitration."

Petitioner presented a counterclaim—

" * * * in the amount of $13,-493.66, which sum represents an unpaid balance of the purchase price of piece goods theretofore sold and delivered by it to Society Brand Hat Co. * * * "

Later the respondent amended its demand for arbitration as follows:

"That, under the terms of the contracts as stated in the original demand for arbitration, Society Brand Hat Company has paid to Kanmak Textiles, Inc., the sum of $2700.00 Dollars, for a partial shipment of goods under the terms of said contract(s); that said goods were unmerchantable and unusable for the purposes intended and Kanmak Textiles, Inc., failed completely to perform under the terms of said contracts; that, due to the fact that Kanmak Textiles, Inc. failed to perform under the terms of their said contracts, it is holding said funds wrongfully."

To the amended demand petitioner answered by raising the issue of power of American to act on a controversy relating to "condition or quality of merchandise."

On September 22, 1953, petitioner wrote a letter to American in which the terms of the contracts on powers of arbitration were set forth and the American was informed that petitioner was standing on the contract in that respect. In the letter petitioner recognized two classes of claims, on which respondent demanded arbitration, (1) defective merchandise, and (2) failure to make delivery. Petitioner stated its position as follows:

"It is our position that Society Brand's counterclaim for damages resulting from delivery of defective

---

2. "R.O.M." means "Run of the Mill."

3. Herein referred to as "American."

goods must be arbitrated before the Mutual Adjustment Bureau and that the American Arbitration Association has no jurisdiction with respect to that specific claim.

" * * * Mr. Swenson, on behalf of the Mutual Adjustment Bureau, made a certificate of examination. This certificate of examination itemizes by lot number, style and piece number all of the goods so examined and sets forth the nature as well as the extent of the defect. All that remains to be done is to have the Mutual Adjustment Bureau make its award on the basis of the said certificate."

The arbitration hearing record recites:

"Now, I go to contract No. 193. Now, with respect to contract No. 193, the contract specifically provides that these goods are sold R.O.M., run of mill. We were ready to deliver R.O.M. Now, Mr. Novoson, on behalf of Society Brand, insisted that deliveries be made free from foreign ends. That involves a question involving condition or quality of the cloth to be delivered under that contract 193, and with respect to that claim I adhere to the position I have taken on the record. I am not submitting that issue to this panel for the reasons already stated."

Respondent at that time replied:

"He does raise that jurisdictional point, and again on that point I say to you you can't have an examination of quality to submit to the Mutual Adjustment Bureau on merchandise which was never delivered, as far as we know it may never have been in existence."

The arbitration was commenced on May 27, 1954. On August 13, 1954, the arbitrators made their award—"in connection" with contracts of 1947 the award was $40,000; the 1948 contract $70,000; the claim of $10,000 representing a payment made on the cloth was allowed. Petitioner's claim for $13,493.66 was denied.

### Issues

From the pleading, oral argument and briefs, I conclude the petitioner's position on its application is:

"I. The arbitrators exceeded their powers in hearing and making an award on contract 193, because the dispute related to condition and quality of cloth, and was cognizable only before Mutual.

"II. If the dispute was subject to arbitration by American's procedure, the award should be remanded with instructions to reopen and give petitioner an opportunity to arbitrate petitioner's claim, because the arbitrators failed to follow statutory procedure.

"III. The arbitrators exceeded their powers with respect to that part of respondent's claims on the six 1947 contracts which sought a recovery for delivery of defective merchandise. Petitioner concedes the question of damages for non-delivery on the six 1947 contracts was properly before the arbitrators."

### I.

If the only question for ruling, on the 1948 contract, was the meaning of the arbitration clause, our assignment would be easy of solution. The contract is clear in its terms that when the controversy relates to the quality or condition of merchandise "to be delivered under" the contract, arbitration will be by Mutual's procedure.

The dispute was twofold: One was on meaning of the contract, but also the parties were in a dispute "relating" to the quality of merchandise "to be delivered under the contract." This character of dispute under the mandate of the contract was referrable to Mutual for arbitration. But our problem is not so simple. It is augmented by the conduct of the parties and the documents executed by them.

While the parties executed seven separate contracts, a just solution of the present issue must consider the seven contracts together. Each of the parties did

just that. Their action leaves the court with no alternative but to do the same.

The 1948 contract was executed April 18, 1948. In June, before any delivery was made under it, a controversy arose as to quality of merchandise to be delivered under the contract. This dispute ended in a notice by respondent to petitioner that the controversy would be arbitrated (Ex. O).

In the meantime a dispute had developed and was undetermined concerning cloth delivered on the six 1947 contracts. The situation then was a controversy between the parties on all seven contracts. Respondent telegraphed petitioner on July 7, 1948, as to how the controversy should be resolved (Ex. Q):

"INASMUCH AS YOU LEAVE US NO ALTERNATIVE, WILL BUY ON OPEN MARKET GOODS ORDERED UNDER CONTRACT 193 AND HOLD YOU FOR DIFFERENCE. IF UNABLE TO OBTAIN, WILL HOLD YOU FOR LOSS OF PROFIT ON SALE OF COMPLETED TROUSERS. INASMUCH AS YOU REFUSED TO HONOR CONTRACT RETURN OUR CHECK FOR $10,000 FORTHWITH. WILL SUBMIT TO ARBITRATION ALL DISPUTES PENDING WITH YOU. IF THIS IS YOUR FINAL DECISION, OUR ATTORNEY WILL MAKE ARRANGEMENTS FOR ARBITRATION."

Petitioner, by its attorney, apparently answering respondent's telegram, sent a letter to respondent dated September 24, 1948 (Ex. 3):

"Our client, Kanmak Textiles, Inc., has advised us that you are presently indebted to it in the sum of $13,493.-66, representing the unpaid balance of purchase price covering certain piece goods sold and delivered to you.

"You, on the other hand, have made certain claims against our client with respect to an alleged defect in some of the goods, *and that, with respect to the sale of certain blended fabric, there is a dispute as to the interpretation of the contract order in regard to the quality of the goods to be delivered thereunder.*

"In view of these disputes, *we suggest that all matters in dispute be submitted to arbitration before the American Arbitration Association in New York City.* In this way, a speedy determination and just adjudication of all claims and counterclaims may be obtained.

"In the event that you are willing to submit all disputes to arbitration, a proper written submission agreement can be entered into so that the matters in dispute can be properly presented." (Emphasis added.)

Here we find petitioner acquiescing in uniting of the claims and suggesting an agency for the arbitration, i. e., American.

Respondent then filed, on November 11, 1949, a demand for arbitration on all seven contracts under American proceedings.

Petitioner filed, on January 10, 1950 (Ex. F) an answer to respondent's demand for arbitration on all seven demands, in which it "denies" any liability for failure to make delivery "in the separate contracts" referred to in the demand for arbitration. The answer contained a "counterclaim" for $13,493.66, for cloth delivered on the six 1947 contracts. No question of jurisdiction is suggested in this answer. As of this date there was a joinder in submission of the controversy, signed by both parties.

Nothing further appears to have been done in the arbitration until three years passed. Neither party blames the other for the delay.

On September 22, 1953, the petitioner sent American a letter. It represents petitioner as then claiming that respondent's demand for arbitration on dispute as to condition of merchandise delivered under the 1947 contracts was a matter solely for Mutual arbitration procedure, but at the same time asserting that arbitration by American on petitioner's coun-

terclaim for payment for this merchandise of $13,493.66 was properly within the contract terms (Ex. J). In this letter petitioner, after alleging it wanted to state its position on "one of the alleged" arbitrative disputes, refers to one of the claims of respondent on the six 1947 contracts, as based on "defective goods." As to the 1948 contract the letter catalogues the dispute as one arising because petitioner "failed and refused to deliver" merchandise. The letter summarizes:

"It is apparent from the above clause that with respect to a dispute involving *quality* of any merchandise delivered or to be delivered, such dispute is to be submitted to the Mutual Adjustment Bureau of the Cloth and Garment Trades. It is equally apparent that with respect to all other disputes, the American Arbitration Association has jurisdiction."

A later transaction confirms our interpretation of the letter of September 22, 1953. On June 11, 1954, respondent amended its claim of arbitration asking for refund of $2,700 paid on the 1947 contract orders (Ex. G). To this amendment petitioner replied (Ex. H):

"2. The aforesaid Amended Demand for Arbitration is predicated upon the alleged claim that goods delivered under the aforesaid written agreements were unmerchantable and unusable for the purposes intended.

"3. By reason thereof, such controversy or claim relates to condition or quality of merchandise, with respect to which the American Arbitration Association has no jurisdiction."

In Wright Lumber Co. v. Herron, 10 Cir., 199 F.2d 446, 449, the subjects to be arbitrated were made up of the proposals to arbitrate:

"The written proposal specifically stated that they requested that such alleged contractual breaches should be submitted to arbitration and requested the selection of an arbitrator, as provided for in Article 12,

so 'that such dispute and disagreement as may exist between the parties *as to your breach of said contract*, aforesaid, may be determined and a decision made.' Upon a receipt of this notice, Wright, likewise in writing, made a counter-accusation and demand for arbitration. * * * These two writings determined the scope of inquiry by the arbitrators * * *."

We conclude that the documents referred to constituted an agreement, by the parties to the contracts, to amend it to provide for arbitrating the dispute on the 1948 contract by American procedure. To hold otherwise would be to permit petitioner to repudiate, on the day the arbitrators were to hold hearings, a course of conduct that led respondent to believe petitioner was agreeing to arbitrate all matters except the claimed delivery of "defective" merchandise on the six 1947 contracts, up to that time. We are not rewriting the contract. The parties may vary them by subsequent written documents. We hold they did so in the particulars described above.

Petitioner concedes—or should we say interprets—the 1947 contracts as authorizing arbitration, on the six claims for damages for failure to deliver merchandise, as a dispute for American procedure. Yet this dispute "relates" to the "condition" of the partial delivery on those same orders. Under the contract petitioner was free, at the period now complained of, to initiate a proceeding before Mutual on the dispute it now claims was a matter for their exclusive jurisdiction. It did not. Petitioner cannot thus play fast and loose with valuable rights of parties resulting from its claimed contract violations.

## II.

At the arbitration hearing's start petitioner stated its position, as of that time, on jurisdiction. It stated it would take no part in the proceedings of the arbitrators having to do with claims for damages based on condition of merchandise, including the 1948 contract. Apparently

this position has been consistently declared ever since it was first raised at the start of the hearing.

We are not in a position on this record to hold petitioner was not in good faith in asserting this jurisdictional question, nor that its counsel was wholly without a basis for feeling, if he did take part subject to objection, the jurisdictional point would be waived. There is a line in Wabash Ry. Co. v. American Refrigerator Transit Co., 8 Cir., 7 F.2d 335, 351:

> "The submission of the matter carried with it an implied agreement to be bound thereby."

The proceeding before the arbitrators was in fact a consolidation of seven cases. It was handled in a practical way as one. Had the cases been handled separately there may have been a different attitude by the arbitrators when petitioner raised the issue of the arbitrators exceeding their powers, and suggested a court ruling be secured on the question raised, before the arbitrators proceeded further. Neither party would have suffered by such procedure.

It is respondent's position the arbitrators should in the first instance determine their jurisdiction and proceed with the hearing, subject to a court ruling after an award.

▮ In this case the hearing by the arbitration took only one day. There could be cases where a lengthy and expensive hearing would serve no purpose, if the arbitrators were exceeding their powers. Arbitrators have broad and almost unlimited determinative powers, when acting on matter properly under submission. They occupy a position not granted any court inferior to a court of last resort. Their findings on law and fact are not reviewable.

> "The arbitrators, for reasons deemed sufficient to them, made the awards as indicated. This court is without power to amend or overrule merely because of disagreement with matters of law or facts determined by the arbitrators. The Hartbridge,

2 Cir., 62 F.2d 72. Their award is final and binding. Colombia v. Cauca Co., 190 U.S. 524, 23 S.Ct. 704, 47 L.Ed. 1159; New York & Cumberland Ry. Co. v. Myers, 18 How. 246, 59 U.S. 246, 15 L.Ed. 380; Burchell v. Marsh, 17 How. 344, 58 U.S. 344, 15 L.Ed. 96; Georgia & F. R. Co. v. Brotherhood of Locomotive Engineers, 5 Cir., 217 F. 755; In re Wilkins, 169 N.Y. 494, 62 N.E. 575. There is no claim here of fraud, corruption or misconduct affecting the award." See James Richardson & Sons v. W. E. Hedger Transp. Corp., 2 Cir., 98 F.2d 55, 57.

▮ There should be a definite check by the courts on whether arbitrators are acting within the agreement of arbitration. Because of the doubt as to the effect of taking part in arbitration, subject to objection, and absolute finality of their finding and the substantial sum involved, we think this a case where the arbitrators should have been sure of their jurisdiction before proceeding.

There should be a full, fair and complete hearing before an arbitration tribunal, as in any proceeding to settle a dispute between contending parties. No harm would have resulted had the board stayed the proceeding until the jurisdictional question was settled by a court. By such action all parties would have been given their day in court, as well as before the arbitrators, and without loss or fear of loss of any legal right.

Had the arbitrators refused to act on the disputes as to which petitioner objected because beyond their powers, there would have been no question of respondent being an aggrieved party and it would doubtless have taken recourse to the procedure of Section 4 of the Act. The mere failure of the arbitrators to so act should not be determinative of their hearing petitioner's side of the controversy. The ex parte hearing on the dispute as to which one party refuses to arbitrate, and proceeding with it to an award, can do harm to the objector in any event. A decision without hearing all the evidence may carry some weight even on a resub-

mission. These reasons show our agreement generally with the case of Bullard v. Morgan H. Grace Co., 240 N.Y. 388, 149 N.E. 559.

### III.

Petitioner takes a paradoxical position on the six 1947 contracts. It is that one of the disputes on part of the contracts was subject to arbitration by Mutual and another dispute on the same contract was a dispute for American under the contract. Yet both disputes related to condition of merchandise delivered. It is not necessary to decide if such multiple submission of a dispute under a single contract is within the intent, purpose and terms of the contracts, in view of the conclusion we reach.

Here are the undisputed facts: A partial[4] delivery was made on the 1947 contracts. The bulk of the cloth delivered was defective. Respondent elected to cancel the remaining deliveries on the 1947 orders.

Respondent, by American arbitration, sought and secured an award for delivery of inferior cloth and for failure of petitioner to make delivery of remainder of order as per the contracts. Petitioner sought, by American arbitration, but failed to get, an award for balance of purchase price on cloth delivered on the 1947 orders or contracts.

Petitioner claimed that on merchandise delivered under the 1947 contracts there was due it $23,493.66. It had received $10,000 prepayment on the 1948 contract. When the 1948 contract was terminated without delivery, petitioner took the $10,000 and applied it on the claim for $23,493.66, for merchandise delivered on the 1947 contracts. In this way petitioner reduced its "counterclaim" to $13,493.66. Petitioner claimed before the arbitrators that they had jurisdiction to determine this claim. It still does.

We cannot comprehend a fair arbitration of petitioner's "counterclaim" for $13,493.66 for cloth delivered on the 1947 orders without considering respondent's claim that it owed petitioner nothing for the cloth because the cloth was not as called for by the contract. It is equally difficult to follow petitioner's reasoning that the American should arbitrate its "counterclaim" for goods delivered on the 1947 contracts and not at the same time arbitrate respondent's claim for damages for the character of delivery. The respective written demands to arbitrate, respondent for damages and petitioner for purchase price, could and did constitute, by act of the parties, the "proper written submission agreement" referred to in the letter of September 24, 1948. To hold there should be a separate tribunal for each of the claims calls for action not found in a fair and reasonable interpretation of the contract. Petitioner, by its conduct in filing and insisting on hearing by the arbitrators of its claim, consented to a settlement by the same body of all claims inherent in the subject matter of its claim. What could a more formal document for arbitration by the parties have provided?

The award should be vacated as to Items 2, 3, 4 and 5. They are all interrelated. The award on Item 1 should be confirmed. The disputes on which awards are vacated should be completely and fully reheard by the arbitrators.

Let order be settled in ten days and submitted.

---

4. As to one or more of the 1947 contracts it appears full delivery was made.