## COLOMBIA *v.* CAUCA COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 259. Argued April 23, 24, 1903.—Decided May 18, 1903.

There is a distinction between foreign States and foreign citizens. Congress did not mean to exclude a sovereign power which sees fit to submit its case to our courts from the right to appeal to the court of last resort. Under section 6 of the act of 1891 the decree of the Circuit Court of Appeals is not made final where one of the parties is a foreign State.

Where the parties to a controversy have submitted the matter to a commission of three who have the power to, and do resolve that all decisions shall be by majority vote, an award by a majority is sufficient and effective.

In an arbitration between a sovereign State and a railroad company and affecting public concerns, whatever might be the technical rules for arbitrators dealing with a private dispute, neither party can defeat the operation of the submission after receiving benefits thereunder, by withdrawing, or by adopting the withdrawal of its nominee, after the discussions have been closed.

Where a foreign State grants a concession to build a railroad to an individual who assigns it and other contracts connected therewith to a corporation and thereafter the State forfeits and cancels the concession but agrees, as a compromise, to take over the road as far as built and pay the actual expense of construction, it is proper in estimating such expenses to

allow the office and traveling expenses and salaries of the officers, but not the cash paid by the corporation for the contract and concession or the amounts paid to the officers of the corporation for securing the agreement to submit the matter to arbitration.

THE case is stated in the opinion of the court.

*Mr. William G. Johnson* for appellant.

*Mr. John W. Beaumont* and *Mr. John K. Cowen* for appellees. *Mr. Edward H. Murphy* was on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal by the Republic of Colombia from a decree of the Circuit Court of Appeals, 113 Fed. Rep. 1020, affirming a decree of the Circuit Court, 106 Fed. Rep. 337, upon a bill brought by the Republic and a cross bill by the defendant, The Cauca Company. The bill is a bill to set aside an award under a submission entered into by the above-mentioned parties. The cross bill is to establish the award as valid, notwithstanding the withdrawal of the representative named by the plaintiff, and prays specific performance. The decree confirms the award after rejecting certain items. Of course it does not attempt to order specific performance.

Before going further with the statement of facts we must dispose of an objection to the jurisdiction of this court to entertain this appeal. As a foreign government has seen fit to submit its case to the courts of the country with whose citizens its controversy exists, it would be unfortunate if through any mistake it was prevented from carrying questions of law to the court of last resort. We are of opinion that it had the right to appeal. The Circuit Court had jurisdiction under the Constitution, article 3, section 2, and the act of August 13, 1888, c. 866, § 1, 25 Stat. 434, as the suit is " a controversy between citizens of a State and foreign States, citizens, or subjects," within the words and meaning of the act. *The Sapphire,* 11 Wall. 164, 167. The right to appeal from the decree of the Circuit Court of Appeals is given by the act of March 3, 1891,

c. 517, § 6, 26 Stat. 826, 828, "in all cases not hereinbefore, in this section, made final." The only words of the section relied upon as making the decree of the Circuit Court of Appeals final are those which declare it so "in all cases where the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different States." We see no reason to doubt that Congress was as well aware of the distinction between foreign States and foreign citizens when it passed the act of 1891 as when it passed the act of 1888, and that when it spoke of aliens it meant foreign citizens alone. We are confident that it did not dream of excluding sovereign powers that chose to sue here from the right to an appeal. The word aliens could be given that effect only by straining it beyond its natural meaning and away from the indications of the context. As the decree of the Circuit Court of Appeals is not made final by § 6, an appeal lies to this court.

Whether technically proved or not, we assume the commission making the award to have found the facts hereafter stated, and we think that they were fully warranted in doing so. The subject matter of the award was a railroad intended to run from Buenaventura to the Pacific, via Cali, to the city of Manizales, and partly built. In 1890 one Cherry received a concession to build and operate this road, with land grants and various guaranties from the government, and with the right to transfer the concession, but all subject to the condition of the work being done in four years. Thereupon the Cauca Company was incorporated in West Virginia for the purpose, among other things, of building and operating the road, and Cherry transferred his concession to it, stipulating that he should be employed to do the work, receive all the company's stock and bonds and various benefits of the concession. On the same day the Colombian Construction and Improvement Company also was incorporated, for many purposes, including that of building the road, and Cherry forthwith assigned to it his contract with the Cauca Company, stipulating that he should receive in return a large amount of full-paid stock of the company and one hundred and thirty-five thousand dollars in cash. Cherry was to be employed as chief constructor

of the road, and the company was to take his place under the Cauca Company's contract.

The time for building the road went by, the road was not built, and the government claimed a forfeiture. On the other hand, the Cauca Company set up that the failure was due to the fault of the government, and other justifications, and the matter became a subject of diplomatic discussion between this country and Colombia. With the merits of this controversy we have nothing to do. As a result, a submission to a special commission, as it was termed, was agreed upon and signed. The essential features of the agreement were that the company by the second article surrendered the railroad, and that Colombia agreed to pay a just indemnity, the scope of which will be considered later, and which was to be determined by the commission. The commission consisted of three—one appointed on behalf of Colombia, one on behalf of the company and the third by agreement between the Secretary of State of this country and the Colombian Minister at Washington. The commission, spoken of in the agreement in the singular, was to "determine the procedure to be followed in the exercise of the power conferred upon it, both as to its own acts and as to the proceedings of the parties." In pursuance of this power it resolved that all decisions should be by majority vote. Thereafter the case was tried, and several items were allowed to the company which it was contended by the representatives of Colombia were not within the scope of the submission. At the end of the trial, when hardly anything remained to be done except to sign the award, the questions remaining open concerning only matters of interest which have been disallowed, the Colombian commissioner announced his resignation to the commission.

The agreement gave Colombia thirty days to appoint a new member, and on its failure the Secretary of State for the United States and the Colombian Minister were to appoint him. But the commission was allowed only one hundred and fifty days "from its installation," which might be extended sixty days more for justifiable grounds. It had sat two hundred and three days when the resignation was announced. Manifestly it was possible, if not certain, that its only way of saving the proceed-

ings from coming to naught was to ignore the communication
and to proceed to the award. This it did. Colombia by its bill
and argument now lays hold of the resignation of its commis-
sioner as a ground for declaring the award void.

Colombia thus is put in the position of seeking to defeat the
award after it has received the railroad in controversy and
while it is undisputed that an appreciable part of the consider-
ation awarded ought to be paid to the company under the terms
of the submission. It is fair to add that the bill offers to pay the
undisputed sum, but not to rescind the submission and return
the railroad. We shall spend little argument upon this part of
the case. Of course, it was not expected that a commission made
up as this was would be unanimous. The commission was dealt
with as a unit, as a kind of court, in the submission. It was
constituted after, if not as the result of, diplomatic discussion
in pursuance of a public statute of Colombia. It was to de-
cide between a sovereign State and a railroad, declared by a law
of Colombia to be a work of public utility. In short, it was deal-
ing with matters of public concern. It had itself resolved, un-
der the powers given to it in the agreement, that a majority
vote should govern. Obviously that was the only possible way,
as each party appointed a representative of its side. We are
satisfied that an award by a majority was sufficient and effec-
tive. We are satisfied, further, that whatever might be the tech-
nical rule for three arbitrators dealing with a private dispute,
neither party could defeat the operation of the submission, af-
ter receiving a large amount of property under it, by with-
drawing or adopting the withdrawal of its nominee when the
discussions were closed. See Cooley v. O'Connor, 12 Wall. 391,
398; Kingston v. Kincaid, 1 Wash. C. C. 448; Ex parte Rogers,
7 Cowen, 526; Carpenter v. Wood, 1 Met. 409; Maynard v.
Frederick, 7 Cush. 247; Kunckle v. Kunckle, 1 Dall. 364; Cum-
berland v. North Yarmouth, 4 Greenl. 459, 468; Grindley v.
Barker, 1 Bos. & P. 229, 236; Dalling v. Mattchett, Willes,
215, 217. In private matters the courts are open if arbitra-
tion fails, but in this case the alternative was a resort to diplo-
matic demand.

We pass now to the main and serious question of the case,

which is, whether the scope of the submission was exceeded by any of the items of the award. The submission was in Spanish only, and there is a dispute about the translation of the most important words. In exchange for the surrender of the concession and the railroad with all of its fixed plant, rolling stock, obras, etc., Colombia is to pay to the company "a just indemnity por las obras y trabajos, (literally, the works and labors,) which the company may have executed during the time in which the undertaking has been in its charge, and for the rolling stock," etc. So in the following article, "The Government of Colombia and the company recognize in advance as just and sole indemnity a sum which shall equal that which the company shall prove that it has expended en los trabajos y obras ejecutados por ella en la construccion de la expressada via ferrea y en los materiales rodantes, herramientas, etc., etc., introducidos con destino a la misma via."

It is argued for Colombia that the untranslated words limit the indemnity to the immediate cost on the ground of the works and labors executed there. On the other side it is argued, especially in view of the previous dealings, that indemnity for the total cost of the enterprise was intended. Our opinion falls between these two extremes. The company, to be sure, was claiming the larger amount, but Colombia had asserted a forfeiture. The submission was a compromise, and presumably the company meant the most and Colombia the least which the words used were capable of meaning. The only fair way is to take the language in its natural sense, not straining it either way. In article 5 it is contemplated, as the means of reaching the indemnity mentioned, that the commission shall appraise obras trabajos y materiales aforesaid ; that it shall examine the books and accounts of the Cauca Compan. in New York, and that it shall inspect on the ground los obras y trabajos of the railroad and the rolling stock. In article 10 it is said that Colombia calculates approximately that the Cauca Company has disbursed in the obra of the railroad a sum of two hundred thousand dollars, (somewhat less than the cost on the ground as agreed before the commission,) while the company considers that sum as much below the just price of the obras y trabajos por ella ejec-

utados.    And the sum named is paid on account in advance for the purpose of obtaining the immediate delivery of the railway. Whether the preliminary negotiations be considered or not, it seems to us to carry out the import of the words used if we limit the indemnity to expenditures which fairly could be found to have contributed in a direct way to the result on the surface of the earth, but extend it to such expenditures, even when they took place at a distance.    If the latter were not included, there was no sufficient reason for a commission meeting in New York.

It is for us to determine the scope of the commission, whatever may have been its own finding with regard to its powers. But when its powers are established we are not called upon to revise any finding that could have been made without going beyond the line which we lay down.    On this footing, subject to a further point to be mentioned, the salaries of executive officers of the Colombian Construction and Improvement Company ($108,181.42), the traveling expenses of these officers ($29,386.30), and the office expenses of the New York office ($21,727.58), properly were allowed, so far as appears.    Although the facts were gone into with superfluous detail, it cannot be said as a matter of law that those items might not have been necessary in order to lay the tracks upon the ground.    The company devoted itself wholly to the business of building the road.    The initial expense naturally would be the greatest, and the company's contention was that but for Colombia the work would have been done.

It is said that the last named company was not a party to the submission, which is true.    But, as we have said, it reasonably might have been found by the commission that it was assignee of the contract between Cherry and the Cauca Company, by which Cherry was to build the road and to receive the Cauca Company's stock and bonds.    Therefore the work done by the construction company had to be paid for by the Cauca Company, and the result of its work was the railroad which the company surrendered.    Under such circumstances we can listen to no hair splitting as to whether work done upon the road by the construction company can be called the Cauca Company's " obras y trabajos."    We certainly should not disturb a

finding by the commission that the cost of building, by whomsoever incurred, was part of the Cauca Company's work.

On the other hand, we cannot uphold the award of $135,000, for cash paid for purchase of the concession. If, as would seem, this was the sum which the construction company was to pay Cherry for the assignment of the Cauca Company contract, it requires a layman's superiority to form in the interest of substance to connect this with the Cauca Company at all. But assuming that connection established, the expense is too remote from cost of construction to be allowed under the words used in this submission. It was contemplated by the concession that it might come to the hands of a corporation having its headquarters elsewhere, and the expenses which we have allowed might have been found necessary, if a Virginia or New York corporation were to begin the construction of this road in Colombia. But the purchase of the right to do the job was an accident. The cost of it would not have been incurred, so far as appears, if the concession had been made to the company direct. Therefore it is not to be paid for unless we adopt the view that the company is to be made whole for all that it paid in connection with the enterprise, rather than for what it paid to get the tracks laid, assuming that it had the right to lay them. As we have said, we adopt the latter view. We think it unlikely and not within the clear meaning of the words that the government undertook to pay an additional sum because its own concession had changed hands.

It is much more obvious that the submission did not warrant charging Colombia with an extra sum of $29,200, voted by the construction company to its officers for services in securing the agreement of submission. We have indicated our reasons sufficiently above.

The award was for a single sum, which the report of the proceedings of the commission shows to have been made up of items, some of which we have considered. These items were discussed by the courts below, seemingly at the instance of Colombia, and without objection on the part of the company, and some of them were disallowed without appeal. If they are open to consideration they show that the award was made up of several

items, some of which may be disallowed without affecting the rest. If they should not be considered, the only course would seem to be to presume that the commission followed its authority, and to sustain the award for the whole original amount. Certainly they could not be given a partial consideration and be taken account of so far as to invalidate the award, and yet be denied examination on the further question whether they could not be stricken out without affecting the residue of the award.

In addition to the oral arguments, we have considered every detail of the elaborate briefs submitted and the record, but have not thought it necessary to mention many of those details or to protract our judgment to an equal length. The amount allowed by the Circuit Court of Appeals is reduced as stated by $164,200, but in our opinion the following items must stand:

Agreed cost of work on the ground and rolling stock . . . . . . . . . . $233,909 14

Salaries of executive officers . . . 108,181 42

Traveling expenses of officers . . : 29,385 88

Expenses and incidentals New York office 21,727 58

$393,204 02

Deduct paid on account . . . . 200,000 00

Amount of award . . . . . $193,204 02

*Decree reversed and cause remanded to the Circuit Court with directions to enter a decree confirming the award for and up to the sum of $193,204.02.*