**KANMAK MILLS, Inc., Appellant,**

v.

**SOCIETY BRAND HAT COMPANY, Appellee.**

**SOCIETY BRAND HAT COMPANY, Appellant,**

v.

**KANMAK MILLS, Inc., Appellee.**

Nos. 15437, 15438.

United States Court of Appeals Eighth Circuit.

Aug. 3, 1956.

4. See Shibley v. United States, 9 Cir., 237 F.2d 327.

5. MacInnis v. United States, 9 Cir., 191 F.2d at page 162, supra.

Marion S. Francis, St. Louis, Mo. (George W. Simpkins, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., and Jerome G. Rosenhaus, New York City, were with him on the brief), for Kanmak Mills, Inc.

Murray Steinberg, St. Louis, Mo. (Richard Marx, St. Louis, Mo., was with him on the brief), for Society Brand Hat Co.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

These two appeals are taken from a final order of the District Court which

affirmed a part and vacated and remanded to the arbitrators for rehearing a part of an arbitration award growing out of seven contracts for delivery of cloth in interstate commerce between Kanmak Mills, Inc. (Kanmak), a corporation engaged in New York in making and selling textile piece goods, as seller and Society Brand Hat Company (Society), a manufacturer of men's trousers in St. Louis, as buyer. The contracts were accepted orders for cloth of which six, numbered 139, 140, 141, 143, 144 and 156, for an aggregate of about 66,500 yards, were dated November 17, 1947, and one numbered 193 was dated April 28, 1948, and called for 100,000 yards. None of the contracts was carried out and bitter disputes ensued.

Each of the orders contained the following agreement to arbitrate printed on the back:

"8. Controversies or claims arising with respect to this contract shall be referred to arbitration in the following manner:

"a. When the controversy or claim related to the condition or quality of any merchandise delivered or to be delivered under the terms hereof, such controversy shall be referred to the Mutual Adjustment Bureau of the Cloth and Garment Trades by the buyer, or upon his failure to refer such controversy or claim to said Mutual Adjustment Bureau of the Cloth and Garment Trades the seller may make such reference.

"If delivery of the merchandise which is the subject of such controversy or claim has been made, then the buyer shall within ten (10) days after demand by the seller forward such merchandise to the Mutual Adjustment Bureau of the Cloth and Garment Trades. The failure of the buyer to forward the merchandise in question to the Mutual Adjustment Bureau of the Cloth and Garment Trades within ten (10) days after demand in writing by the seller shall constitute a waiver of the controversy or claim previously asserted.

"The decision of the Mutual Adjustment Bureau of the Cloth and Garment Trades on all controversies and claims submitted to it as provided herein shall be binding upon the parties hereto.

"b. All other controversies arising out of or relating to this contract, or breach thereof, shall be settled by arbitration in accordance with the Rules, then obtaining, of the American Arbitration Association and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction."

On delivery of 18,572 yards of cloth in the first shipment under the 1947 orders, Society examined the cloth and claimed it was in bad condition. Upon receipt of the claim, the seller (Kanmak) made demand on Society, as provided in the arbitration agreement, that Society forward such merchandise to the Mutual Adjustment Bureau of the Cloth and Garment Trades named in the contract, and Society complied. Mutual duly examined the goods and made report of its findings to Kanmak which forwarded the report to Society. Mutual found that only 3,902⅘ yards were normal goods and that 10,125⅘ yards were seconds.

On May 1, 1948, after the contract numbered 193 for 100,000 yards had been entered into on April 28, 1948, Society wrote Kanmak:

"Society Brand Hat Company
* * *
"May 1st
"Our 42nd Year
"1948"
* * *

"Pleas refer to the various contracts which we have with you on which delivery was to be completed by January through April 15th, January through April, etc. We ask that you kindly cancel out these orders as we could not possibly make these goods up and get them delivered to our customers in line with our

commitments to them due to your late delivery.

"We have received a substantial number of cancellations because of your failure to deliver the goods on these contracts in time. We are to-day advising our customers that the mill has failed to deliver the goods in time and that we will be unable to make deliveries to them of trousers of these fabrics. Please acknowledge these cancellations by return mail.

"In other words, all orders that we have placed with you to date which were not shipped before the 1st day of April are hereby cancelled with exception, of course, of the new order No. 193 which is dated April 28, 1948."

Kanmak replied by letter of May 3, 1948, that it was accepting and effecting cancellation of the remaining unshipped portions of all orders on file with them with the exception of contract 193.

Contract No. 193 for 100,000 yards of cloth provided for delivery of 20,000 yards monthly, May through September 1948, and Society was required and did pay $10,000 in advance, which was to be applied on the very last shipment, under the contract. The contract contained provision that shipments were to be R.O.M. (run of mill). It contained no specific reference to "free from foreign ends" but it specified percentages as to content of cloth, 50% cotton, 25% acetate, 25% wool.

On June 28, 1948, Society telegraphed Kanmak to ship 20,000 yards under contract No. 193 "free from foreign ends," to which Kanmak replied:

"Have goods ready for shipment but cannot accept your terms as to their being free from foreign ends. We sold you these goods R.O.M. and will ship same to you as per contract on those terms only. If this is agreeable wire immediately."

On July 6, 1948, Society telegraphed Kanmak that the materials sold to it on Contract 193 were warranted to be free from foreign ends; that tests were to have been made to eliminate pieces with foreign ends; that it would accept only goods free from foreign ends, and it insisted that 20,000 yards be shipped to its dyers "today" or it would purchase similar goods on open market and hold Kanmak for loss which was not speculative but probable. Notice was included that Society wished to refer entire matter to arbitration immediately. Kanmak wired on the same day maintaining its position that it would ship R.O.M., but not free from foreign ends. It stated it would submit to arbitration forthwith.

On the next day (July 7, 1948), Society wired Kanmak:

"Retel inasmuch as you leave us no alternative, will buy on open market goods ordered under contract 193 and hold you for difference. If unable to obtain, will hold you for loss of profit on sale of completed trousers. Inasmuch as you refused to honor contract return our check for $10,000 forthwith. Will submit to arbitration all disputes pending with you. If this is your final decision, our attorney will make arrangements for arbitration."

Kanmak, by its attorney, apparently answering the foregoing telegram, wrote Society on September 24, 1948:

"Our client, Kanmak Textiles, Inc., has advised us that you are presently indebted to it in the sum of $13,493.66, representing the unpaid balance of purchase price covering certain piece goods sold and delivered to you.

"You, on the other hand, have made certain claims against our client with respect to an alleged defect in some of the goods, *and that, with respect to the sale of certain blended fabric, there is a dispute as to the interpretation of the contract order in regard to the quality of the goods to be delivered thereunder.*

"In view of these disputes, *we suggest that all matters in dispute be submitted to arbitration before*

*the American Arbitration Association in New York City.* In this way, a speedy determination and just adjudication of all claims and counterclaims may be obtained.

"In the event that you are willing to submit all disputes to arbitration, a proper written submission agreement can be entered into so that the matters in dispute can be properly presented." (Emphasis added.)

Thereafter, on November 22, 1949, Society filed its Demand for Arbitration of all matters in dispute between it and Kanmak with the American Arbitration Association named in the contracts and referred to in the foregoing letter, and notice was given to Kanmak.

The Demand described each of the seven written contracts entered into between the parties with particularity, giving the kind and amount of cloth called for, when it was to be delivered and the terms of the sale. Also, the number of yards of goods that had been delivered on those of the contracts upon which some delivery was made, and the failure of Kanmak on demand to deliver according to the contracts. Society also alleged in the Demand that samples of the goods it ordered were delivered to it by Kanmak for the fabrication of sample trousers, and Society obtained firm orders and promised delivery based on the delivery dates of the contracts. On Kanmak's failure to deliver, Society attempted to obtain other piece goods to substitute, but was unable to do so, and as the result of Kanmak's failure to deliver the 165,000 yards of cloth as provided in the contracts, Society lost the profit on its sale. That 18,573¼ yards received from Kanmak was not according to contract and was unusable for the purpose sold. That as Society had deposited $10,000 in advance upon contract 193, on which Kanmak refused to deliver any goods, recovery of that amount was also sought. Society claimed damages from Kanmak in such sums as the arbitrators of the American Arbitration Association shall determine due it for the failure of Kanmak to make delivery of the piece goods ordered, and for further damages for delivery of piece goods not in accordance with samples, and for the $10,000 received and wrongfully withheld by Kanmak.

On January 10, 1950, Kanmak filed with the Arbitration Association its Answer to Society's Demand, as follows:

"American Arbitration Association Administrator
American Arbitration Tribunal
In the matter
of
Demand for Arbitration
Amoskan Fabrics Division of Kanmak Textiles, Inc.
and
Society Brand Hat Company
(Falcon Sportswear Division).

"Answer of Amoskan Fabrics Division of Kanmak Textiles, Inc. to the Claim Made by the Claimant as Set Forth in the Demand for Arbitration Dated November 22, 1949.

"Kanmak respectfully alleges:

"1. Kanmak denies that it is in any way liable or indebted to the claimant by reason of the alleged failure to make delivery of the piece goods referred to in the separate contracts set forth in the Demand for Arbitration.

"As and for a cross-demand and by way of affirmative relief:

"2. Kanmak Textiles, Inc. does hereby claim that Society Brand Hat Co., the claimant herein, is indebted to it in the amount of $13,493.66, which sum represents an unpaid balance of the purchase price of piece goods theretofore sold and delivered by it to Society Brand Hat Company. In addition to said amount, Kanmak Textiles, Inc. asks interest on said amount from July 7th, 1948.

"Signed: Kanmak Textiles, Inc."

After the disputes arising out of the seven contracts had thus been reduced to clear and definite issue for arbitration by the Demand of Society and the Answer and counterclaim of Kanmak filed with the Arbitration Association, some three years elapsed before the defined contro-

versies came on for hearing on May 27, 1954, before Hugh H. C. Weed, Fred Armstrong, and Edward Greensfelder, who were the duly designated and sworn arbitrators appointed under its rules by the American Arbitration Association. A transcript of the appearances, proceedings and evidence was preserved and offered before the District Court, and is brought up to this Court.

It shows that both Society and Kanmak appeared by counsel before the arbitrators in support of their respective claims, and the Association was represented by Mr. Sidney Braufman.

Before the first witness was heard, counsel for Kanmak read to the arbitrators the provisions of the agreement for arbitration printed on the back of each of the seven contracts, and relying on the provisions therein that when a controversy relates to condition or quality of any merchandise, it shall be referred to the Mutual Adjustment Bureau of the Cloth and Garment Trades, and all other controversies arising out of the contract, shall be settled by arbitration of the American Arbitration Association, he argued at length before the panel that it was without jurisdiction to pass on any dispute relating to the 1948 contract numbered 193. He argued that the dispute relating to that contract (involving R.O. M., "run of mill", and free from foreign ends) concerned only quality of merchandise and the panel had no jurisdiction over it.

As to the 1947 contracts, he stated that:

"The only dispute which Kanmak is now submitting before the panel under the auspices of the American Arbitration Association are the undelivered portions of contracts 143, 144, 156, 139, 140 and 141. The only other dispute we are submitting is the indebtedness due Kanmak Textile on the open account. We claim there is due us, and we file * * * an answer with a counterclaim, $13,-493.66 as due Kanmak Textile from Society Brand."

Later in the hearing, counsel for Kanmak made proof on its "Answer with a counterclaim" as follows:

"Mr. Rosenhaus: With respect to the counterclaim interposed by Kanmak Textiles wherein they claim an unpaid balance of $13,493.66 for the goods actually shipped on the six contracts other than on contract No. 193, I offer in evidence a statement showing each debit and each credit showing a balance due of $13,493.66. In that respect I call to the attention of the arbitrators that on July 7, the statement shows a $10,000 credit to the account of Society Brand. That $10,000 is the $10,000 which was deposited as a prepayment under contract 193, so that in the event we had no right to apply that payment because of the claim made by Society Brand, the credit balance due would be $23,493.66."[1]

Counsel for Kanmak also introduced in evidence the letter it wrote to Society on May 3, 1948, supra, in which Kanmak said it was "complying with instructions from Society and * * * accepting and effecting cancellation of the 1947 contracts."[2]

---

[1]. In explaining to the panel how it could arbitrate the issue whether Society owed Kanmak $13,493.66 (or $23,493.66) without settling whether Kanmak had complied to that extent with its 1947 contracts, Kanmak's counsel said:
"* * * so what you do in your award is say, 'We award Kanmak thirteen thousand some odd dollars.' However, payment is to be withheld until the other disputes relating to condition and quality are determined by Mutual Adjustment, as simple as that. * * * In other words, any award you make may be subject to Mutual Adjustment decision on the defective goods."

[2]. A defense asserted by Kanmak against Society's claim for damages for failure to fulfill the 1947 contracts is that the contracts were mutually "cancelled" as to the undelivered goods. The defense is rested on the two letters of May 1, 1948, and May 3, 1948, supra.

Counsel for Kanmak did not remain through the entire session with the arbitrators. He obtained permission to submit a brief attacking the panel's jurisdiction and withdrew during the examination of Mr. Novoson, the Vice-President and General Manager of Society who had negotiated the contracts.

The evidence submitted to the arbitrators fully sustained the allegations of Society's Demand. All the contracts were negotiated between Mr. Novoson, Society's Vice-President and General Manager, and a Mr. Sidney Marks, a sales manager and stylist in the employ of Kanmak. Both testified for Society to substantially the same effect. Kanmak was informed of the intended use of the cloth it sold, and of the inevitable loss that would result to Society from failure to deliver the goods ordered within the time specified. The inability of Society to obtain substitute goods was proven and the amount of the loss that resulted to Society was shown with as close accuracy as is reasonable in respect to lost profits.

As to contract No. 193 for 100,000 yards of cloth. It was shown that Kanmak had on hand prior to April 28, 1948, several hundred thousand yards of cloth from which it offered to sell to Society 100,000 yards at a very low price of 55 cents a yard [3] to be made up by Society into men's trousers or slacks. It was a gray cloth and the trouble with it was that in many of the bolts the cloth was not free from foreign ends in that it contained fibers other than the percentage of cotton, acetate and wool specified in the contract and, by reason of the presence of foreign ends, it could not be evenly dyed. Such bolts were not usable for making into trousers. Kanmak had found a way to separate the bolts of the cloth that were free from foreign ends from those that were not, and at the date of the contract had taken out at least 50,000 yards of it which was free from foreign ends, and Kanmak had more than another 50,000 yards of it left that was also free from foreign ends. Society entered into the contract No. 193 for 100,-000 yards with an express agreement that it would receive the 50,000 yards that were free from foreign ends that were already separated out and the other 50,000 yards free from foreign ends that were there on hand and would be separated.

As to the provision of the contract that the cloth should be run of the mill, both Society's Vice-President and Kanmak's former sales agent testified that they contracted specifically that the goods should be run of the mill, but they said that the description, free from foreign ends, had no relation to R.O.M., run of mill. Both were experts. They agreed that run of the mill goods were normal goods from two to five per cent defective, but "normal," "merchandisable," "merchantable," "usable for which sold," i. e. to make up into pants. The defects in run of the mill goods arise from mechanical weaving "that don't remain long in operation before being quickly detected." But foreign ends are foreign fibers or foreign matters in the goods that don't belong there. The fiber content was specified in contract No. 193 so as to be sure about the content and that no foreign ends or foreign fibers were in the cloth. "It was definitely agreed that this goods would be free from foreign ends and that run of the mill did not mean that there could be any foreign ends in the goods." The provisions of contract No. 193 that the goods should be run of the mill was consistent with the agreement that they should be free from foreign ends that would prevent their being dyed evenly and "usable for which sold."

The proof as to alleged breach by Kanmak of the six 1947 contracts was that only 18,572 yards were delivered out of about 66,500 contracted for and none of that delivered was usable for the purpose for which it was sold. Some 4,000 yards of it was cut up by Society and found to be unusable. After Society

---

3. Mr. Novoson said: "I bought them at a very attractive price, under half the market price. Comparable goods prob- ably would have been $2.00 a yard and you would have to add finishing costs to that."

turned the cloth over, at Kanmak's direction, to be inspected by Mutual, it remained at Kanmak's order up to the time of trial. The evidence was that Society was ready, willing and able to take the goods under the 1947 contracts to make it up in trousers and sell it at a profit of $1.00 per pair of trousers, but that it could not get it or obtain a substitute. It was employing about 200 men and a portion of its facilities remained unused as a result of Kanmak's failure to perform and it lost its sale. The loss of profits and the amount thereof was fairly proved.

As was shown by the letters of May 1 and May 3, 1948, supra, when the time within which Society should have had the goods had passed, Society directed Kanmak to "cancel out these orders of 1947." Society's position was that its right to damages for Kanmak's failure to deliver the cloth called for in the 1947 orders had already accrued at the time when it directed cancellation of the undelivered part of the contracts. It did nothing to waive its claim for such damages. It merely cancelled out future deliveries to avoid increasing its loss and damage by "getting stuck with" unseasonable and unusable goods that Kanmak might later undertake to ship to it.

The panel of arbitrators, having considered the evidence, arguments and briefs, made their award in writing accompanied by written Opinion on August 13, 1954.

Their award was set forth in five numbered items.

In 1 they awarded $40,000.00 to Society against Kanmak on the claim based on failure to deliver on the six 1947 orders. In 2 they awarded $70,000.00 to Society against Kanmak on the claim based on the failure to deliver on order No. 193. In 3 they awarded recovery to Society against Kanmak of the $10,000.00 delivered by Society in advance on contract No. 193. In 4 they denied award to Society upon an amended demand for arbitration filed by Society with the American Arbitration Association on June 4, 1954. In 5 they "found against" Kanmak on its claim for $13,493.66 and made no award. Summarizing, they awarded a total of $120,000 to Society against Kanmak.

In the written opinion of the arbitrators accompanying the Award, they gave reasons in respect to each item of their award. The record reflects that two of the arbitrators on the panel of three were lawyers. No question is raised as to their integrity or conscientious endeavor, and the opinion reflects care in preparation such as would be expected of a qualified court.

The opinion indicates that the arbitrators considered Kanmak's contention that the American Arbitration Association panel did not have jurisdiction to consider the controversy in connection with the 1947 orders on the grounds that the controversy relates to quality or condition of merchandise, and that such controversy was, by the terms of the contracts, reserved to Mutual. After reciting the facts concerning the forwarding by Society, at Kanmak's direction, to Mutual for examination of the only shipment that was made, the examination that was made by Mutual, and its decision that 72% of the goods were seconds and not of normal quality, the arbitrators said: "We believe that this finding by Mutual was a decision by Mutual under Section 8(a) above as to the controversy between the parties pertaining to the condition or quality of the merchandise delivered by Amoskan to Society. We believe that Society's exhibits, as well as the record itself, shows this very clearly. We believe that such decision of Mutual determined that there had been failure on the part of Amoksan to comply with the contracts. Where 72% of the goods delivered were seconds and not of normal quality, such a condition is tantamount to non-delivery and non-performance of the contract."

Under Item 1 the arbitrators considered the defense interposed before them in behalf of Kanmak that Society and Kanmak had agreed to cancel out the undelivered 1947 orders and to relieve Kanmak of any further liability for delivery. It was stated in the opinion: "Society's

letter of May 1, 1948, was written after all deliveries, except a small part of the deliveries under one contract, were past due and we believe that said letter did not constitute a release of Society's claim, but rather was merely a statement that it would not accept any further goods under the particular orders."

The opinion also included the following in respect to Item 1 of the award:

"It is our opinion that the arbitration in regard to this matter does not relate to a controversy in regard to the condition or quality of the merchandise. It is an arbitration taking place after the controversy in regard to the condition or quality of the merchandise had been decided by Mutual.

"Even if such is not the case, it is our opinion that, in view of the fact that this arbitration was commenced by the filing of a demand on November 22, 1949 after Kanmak's counsel on September 27, 1948 wrote Society suggesting arbitration (Kanmak's Exhibit 3) and that Kanmak filed its answer on January 10, 1950, in which it sought affirmative relief in regard to the very goods as to which it claims there was a controversy in regard to the condition or quality of such goods, and that Kanmak did not raise the jurisdictional question at that time nor at any time later until it wrote its letter of September 22, 1953 to the American Arbitration Society and Murray Steinberg (Kanmak's Exhibit 1), Kanmak cannot claim that the Arbitrators did not have jurisdiction.

"It is our opinion that Amoskan has failed to deliver the goods purchased from it by Society under the above mentioned series of orders; that by reason thereof, Society could not manufacture and sell forty thousand (40,000) pairs of slacks on which it would have made a profit of One Dollar ($1.00) per pair and that accordingly Society suffered a loss of Forty Thousand ($40,000) Dollars."

As to Item 2 of the award, the arbitrators said in their opinion:

"Amoskan [Kanmak] also contends that the Arbitrators do not have jurisdiction to consider the controversy in connection with Order #193 placed with Amoskan by Society on the grounds that such controversy also relates to the 'condition or quality' of such merchandise and that jurisdiction as to such matters is reserved to Mutual. However, although counsel for Amoskan in his opening statement mentioned that the non-delivery of the goods described in Order #193 had to do with a controversy in regard to the 'condition or quality' of merchandise, there is no evidence introduced by Amoskan nor any other evidence to substantiate Amoskan's counsel's opening statement.[4]

"The record shows that Order #193 was entered into between the parties but that Kanmak failed to deliver to Society any of the merchandise covered by such order; that by reason thereof Society could not manufacture and sell 70,000 pairs of slacks on which it would have made a profit of $1.00 per pair and that, accordingly, Society suffered a loss of $70,000.00."

As to Item 3 of the award, the opinion sets forth:

"Society transmitted to Amoskan its check in the sum of Ten Thousand ($10,000.00) Dollars to apply on account of the amount to become due from Society to Amoskan under Order #193. This is admitted by

---

4. On the contrary it may be argued that Kanmak had different lots of cloth on hand at Manchester of which at least a hundred thousand yards was cloth that was free from foreign ends. All of it was R.O.M. [run of mill] but much of the rest had foreign ends. The dispute was not as to condition or quality of cloth. The dispute was as to which of its lots of goods Kanmak sold and was obligated to deliver.

Counsel for Amoskan. We believe that neither at the time such check was received by Amoskan nor at any time since was any amount due from Society to Amoskan under Order # 193 (See portion of opinion as to Item 2 of the Award). Furthermore, if any amount was due from Society to Amoskan by reason of any transaction between the parties other than in connection with Order #193, and we do not believe such to be so, Amoskan did not have the right to apply such sum against any such amount. Accordingly, it was improper for Amoskan to retain such sum of $10,000.00 and it should be returned by Amoskan to Society."

As to Item 4, it is stated:

"Society has filed an amended demand for arbitration. It is unnecessary for us to consider whether or not it is proper to accept such amended demand because we do not believe that Society has proven it is entitled to the refund of Twenty-seven Hundred ($2700.00) Dollars sought by it under such amended demand."

As to Item 5, the opinion reads:

"That portion of our Opinion referring to Item 1 of the Award is the basis of our finding against Amoskan on its claim for $13,493.66 set forth in its Answer to Society's original demand."

Within due time after the unanimous execution and the delivery of the Award and accompanying Opinion, Kanmak applied to the District Court, in conformity with 9 U.S.C.A. § 10, to vacate the Award and Society filed answer and a cross bill. Society prayed that the award be affirmed in the sum of $120,000 and that it be made a judgment of record in the court.

The trial in the District Court was upon the record made before the arbitrators with no additional evidence. Briefs were submitted by both parties. The trial resulted in a judgment which confirmed Item 1 of the Award and made the amount of $40,000.00 awarded in favor of Society against Kanmak a judgment of the court, but ordered that Items 2, 3, 4 and 5 of the Award and all matters to be decided thereby be vacated and remanded to the arbitrators for full and complete rehearing. The opinion of the District Court is published at 134 F.Supp. 263.

In No. 15,437, Kanmak assigns error here as to each, every and all matters adjudged and decreed by the judgment.

In No. 15,438, Society complains of the part of the judgment which vacates and remands and directs rehearing before the same arbitrators of Items 2, 3, 4 and 5 of the Award.

### Opinion.

The district judge stated in his opinion, 134 F.Supp. at page 266, that he concluded from the pleading, oral argument and brief on behalf of Kanmak that its position on its application to vacate the award was:

" 'I. The arbitrators exceeded their powers in hearing and making an award on contract 193, because the dispute related to condition and quality of cloth, and was cognizable only before Mutual.

" 'II. If the dispute was subject to arbitration by American's procedure, the award should be remanded with instructions to reopen and give petitioner an opportunity to arbitrate petitioner's claim, because the arbitrators failed to follow statutory procedure.

" 'III. The arbitrators exceeded their powers with respect to that part of respondent's claims on the six 1947 contracts which sought a recovery for delivery of defective merchandise. Petitioner concedes the question of damages for non-delivery on the six 1947 contracts was properly before the arbitrators.' "

In discussing the first issue concerning contract 193, the trial court set forth the demonstrative items of documentary evidence appearing in the record and found that Kanmak had acquiesced in uniting all of Society's claims against it that

grew out of the seven contracts and had suggested the American Arbitration Association for the arbitration of them. That Society had accordingly filed its demand which fully and clearly set forth all of Society's claims growing out of Kanmak's alleged breaches of each and all of the contracts and that Kanmak had fully answered all of the claims and set up its own claims against Society growing out of all the contracts with no question of jurisdiction suggested in its answer and counterclaim. The court concluded on consideration of the evidence that, as of the date when the issues were thus joined before the agreed upon arbitrators, "there was a joinder in submission of the controversy signed by both parties." Section 2 of the Arbitration Act, 9 U.S.C.A.

It was argued for Kanmak that by reason of the provisions of the printed contracts (8a) concerning reference of disputes to Mutual, the American Arbitration Association panel failed to obtain jurisdiction, but the court held that the documentary evidence established an agreement by the parties to the contracts to amend them to provide for arbitrating the dispute on the 1948 contract by American procedure. It cited Wright Lumber Co. v. Herron, 10 Cir., 199 F.2d 446, 449, which supports its conclusion.

Kanmak has presented the same contention concerning the arbitrator's jurisdiction over the disputes as to contract No. 193 on this appeal, but we hold that the trial court did not err in concluding that the arbitrators had jurisdiction of the controversy concerning that contract.

Passing the second issue stated by the trial court, we consider next the third issue concerning Kanmak's attack on the award made in connection with the six 1947 contracts.

The court summarized the facts concerning the controversy on page 270 of 134 F.Supp. of the opinion in conformity with the evidence, and held that the parties had entered into a proper written submission agreement for arbitration of Society's claim against Kanmak for damages for failure to deliver goods according to contract, and Kanmak's claim against Society for the recovery of the agreed purchase price for delivery of the goods in compliance with the contracts.

The court found no ground upon which to vacate this part of the award.

On this appeal, it is contended for Kanmak in respect to this matter that the arbitrators, though intending to apply the law, misapplied it in that they failed to hold that Society released Kanmak from its liability for breach of the six 1947 contracts by mutual agreement to cancel out the contracts evidenced by the letters of May 1 and May 3, supra. This defense was submitted to the arbitrators and fully considered, discussed and settled by them. The arbitrators concluded that Society's letter of May 1, 1948, did not constitute a release of its claim against Kanmak for damages for breach of contract already accrued as shown in the letter at the time it was written. Decision of that question was clearly for the arbitrators as shown by the numerous cases. The Hartbridge, 2 Cir., 62 F.2d 72. Their award is final and binding. Republic of Colombia v. Cauca Company, 190 U.S. 524, 23 S.Ct. 704, 47 L.Ed. 1159; New York and Cumberland Railroad Company v. Myers, 18 How. 246, 59 U.S. 246, 15 L.Ed. 380; Burchell v. Marsh, 17 How. 344, 58 U.S. 344, 15 L.Ed. 96; Georgia & F. R. Co. v. Brotherhood of Locomotive Engineers, 5 Cir., 217 F. 755; In re Wilkins, 169 N.Y. 494, 62 N.E. 575. There is no claim here of fraud, corruption or misconduct affecting the award. See James Richardson & Sons v. W. E. Hedger Transp. Corp., 2 Cir., 98 F.2d 55, 57.

We hold that the trial court's affirmance and enforcement of Item 1 of the Award was without error.

As to the second issue stated by the court concerning the re-opening of the Award.

Kanmak's counsel argued before the arbitrators and pleaded and contended in the District Court that when Kanmak

denied jurisdiction of the arbitrators by letter and its counsel repeated the denial orally before the arbitrators and announced his intention not to participate fully in the arbitration proceedings and to depart from the session, Society should have petitioned the proper court for an order directing that the arbitration proceed and that the arbitrators lost power to proceed when Society failed to apply for and obtain such order.

Acceding to the contention, the trial court concluded that when Kanmak's counsel asserted in a letter written to Society and the arbitration panel on September 22, 1953, and repeated orally before the arbitrators at the hearing that they were without jurisdiction to arbitrate the No. 193 contract disputes, and that he would not remain or participate in arbitration thereof, the question of jurisdiction so raised should have been taken to court and determined. It cited Section 4 of the Arbitration Act and expressed agreement with the case of Bullard v. Morgan H. Grace Co., 240 N.Y. 388, 148 N.E. 559. It was on that ground that the court ordered vacation of the award as to all of its items except the first, and remand of the case to the arbitrators for rehearing.

But we do not find that intention to effect such a result is expressed in the statute.

Section 2 of the Act provides:

"A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

As the district court found upon clear evidence, the parties in this case did agree in writing upon arbitration of clearly defined controversies and so became irrevocably bound under this section of the Act.

Section 4 of the Act, so far as relevant here, provides:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * "

The provision that a party aggrieved *may* apply to a court is permissive merely and carries no implication that he *must* apply. It can not be fairly said that Society was a party aggrieved by a determination on Kanmak's part not to defend itself before the arbitrators. All that Kanmak was entitled to on the arbitration was the opportunity to maintain the issues on its part to be maintained. If in fact the arbitrators were without jurisdiction of the subject matter of the arbitration, their award could not be enforced in favor of either party to it.

The limited power conferred on the court by Section 4 of the Act to direct an agreed upon arbitration to proceed in the manner provided in the agreement appears to have no relation to the situation that arose in this case. Here both parties not only agreed to arbitrate, but formulated the issues between them, chose the arbitrators, presented themselves with evidence before the duly constituted tribunal, and were proceeding. It can not be fairly said that Society became an aggrieved party merely because Kanmak declared its intention not to defend itself as to a part of the issues it had joined in framing, and stated that it would absent itself. All that Kanmak or Society was entitled to was its opportu-

nity to be heard by the tribunal. No order issued under Section 4 of the Act would compel Kanmak to make itself heard. We do not hold that Section 4 enables the respondent in arbitration proceedings to halt the proceedings and force the petitioner to resort to a court at every stage before award by merely asserting that there is a lack of jurisdiction. There are doubtless many situations where failure, neglect or refusal of one of the parties to arbitrate as agreed causes the other to become an aggrieved party permissibly entitled to apply for a court order under the Section, as when an arbitration could not proceed unless the defaulting party took some affirmative step. The Bullard case, supra, presented the situation where one of the three arbitrators withdrew and there was no provision as to a substitute. But in this case, no analogous situation arose. The parties proceeded according to the law and Kanmak was accorded every right to which it was entitled.

In Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, certiorari denied, 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392, defendant in an action upon an arbitration award made the same contention that Kanmak urges here. It had refused to recognize the validity of the arbitration provision of its contract, and contended that the recourse of the petitioner in arbitration was to apply under Section 4 of the Arbitration Act for an order directing that the arbitration proceed. The arbitration had proceeded ex parte before a single arbitrator without such application or order and the contention was that the resultant award of $14,503.71 was void. The Court of Appeals for the Sixth Circuit affirmed the judgment of the district court which held the award valid and entered judgment upon it. The Court of Appeals considered and discussed the Bullard case at length and its conclusion, 206 F.2d loc. cit. 120, was that the "Appellant in the suit upon the

award could have raised any defenses which it could have raised under the statutory proceeding for an order directing arbitration to proceed in accordance with the contract, under Section 4 of the Act. Such defenses would include the invalidity of the contract, duress, and fraud in its procurement. In fact, the defense of fraud in the procurement of the contract was raised by the appellant in this case and passed upon by the district court on the trial. Moreover, the terms of Section 4 of the Act are permissive, not mandatory. See International Brotherhood of Teamsters, [Chauffeurs, Warehousemen and Helpers] v. Shapiro, [138 Conn. 57, 83 A.2d 345]. Our conclusion is that it was not necessary for Smith & Bird to resort to Section 4 of the Act before proceeding to arbitration in this case by the single arbitrator."

In the Anaconda v. American Sugar Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117, the Supreme Court recognized that Section 4 "permits" a party aggrieved to petition, etc., and the Shapiro case, supra, is also to the same effect.

We are in accord with the decision of the Sixth Circuit as here applicable.

All contentions for Kanmak have been considered, but we conclude that the district court erred in vacating Items 2, 3, 4, and 5 of the Award because Society had not applied for or obtained an order directing the arbitration to proceed under Section 4 of the Act. The arbitration did proceed in all respects according to law, and the Award was in all respects valid.

The judgment is affirmed as to Item 1 of the Award, and reversed as to the part appealed from by Society. The case is remanded with direction to affirm and make a judgment of the court, Items 2, 3, 4, and 5, of the Award.

Affirmed in part and in part reversed and remanded with direction.